UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BONCHON FRANCHISE LLC,

                    Plaintiff,

    -against-

XIAO CHENG ZHOU; EILEEN ZHOU;
STAMFORD BROTHER, LLC,

                    Defendants.

<u>COMPLAINT</u>

Docket No. _____

Plaintiff Bonchon Franchise LLC, by its attorneys, Kaufmann Gildin & Robbins LLP, as

and for its Complaint against Defendants Xiao Cheng Zhou, Eileen Zhou and Stamford Brother,

LLC respectfully alleges as follows:

1.       This is a civil action seeking monetary damages and injunctive relief for breach of

contract, unfair competition and misappropriation of trade secrets.

2.       This action arises from Defendants' wrongful operation of a restaurant in New

Haven Connecticut selling Korean fried chicken and other Korean delicacies formerly sold by

Defendants under Plaintiff's trademark "BONCHON" at the same location pursuant to a now-

expired Bonchon Franchise Agreement with plaintiff Bonchon Franchise LLC, in violation of the

post-expiration covenant not to compete in the Bonchon Franchise Agreement and other related

agreements executed by Defendant Xiao Cheng Zhou.

3.       Immediately following the expiration of the Bonchon Franchise Agreement, Mr.

Zhou, his wife Defendant Eileen Zhou, and their entity Defendant Stamford Brother, LLC began

operating a restaurant under the name "MAMA SHIM," at the same location as the previously

franchised BONCHON restaurant and offering a virtually identical menu of Korean fried chicken

and related Korean delicacies.

4.       Defendants' operation of MAMA SHIM is in direct violation of the two-year

post-expiration covenant not to compete and other post-expiration provisions in Mr Zhou's Franchise Agreement, nearly identical provisions in the other related agreements, and is also prohibited by statutory and common law.

5. Defendants have further breached the Franchise Agreement and related agreements by continuing to use Bonchon's Confidential Information in order to compete with Bonchon from its former BONCHON Restaurant location.

6. Under the Bonchon Franchise Agreement and related agreements, Mr. Zhou expressly agreed that such post-expiration competition would result in immediate and irreparable injury to Bonchon for which no adequate remedy at law will be available, and, accordingly, Mr. Zhou agreed to the entry of an injunction prohibiting any further violation of the post-expiration covenant not to compete.

7. As detailed below, Bonchon seeks damages and injunctive relief to prevent further irreparable harm to protect Bonchon's goodwill, confidential information and trade secrets developed solely out of the efforts, expertise and expenditures of Bonchon and wrongfully misappropriated by Defendants for their own benefit and to Bonchon's and its other franchisees' detriment.

8. Without limiting the foregoing, Bonchon seeks a preliminary injunction requiring Defendants to comply with the post-expiration obligations in the Franchise Agreement and related agreements, including enjoining them from operating MAMA SHIM in violation of the two-year post-expiration non-competition and non-disclosure covenants. Bonchon also seeks an order requiring Defendants to return and to forever cease use of Bonchon's Confidential Information, as required by the Bonchon Franchise Agreement and the related agreements.

Doc Num 1005958-V2

**THE PARTIES**

9. Plaintiff Bonchon Franchise LLC ("Bonchon") is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business in Dallas, Texas. Bonchon U.S.A., Inc., a corporation duly organized and existing under the laws of the State of New York with its principal place of business in Dallas, Texas, is the sole member of Plaintiff Bonchon Franchise LLC.

10. Upon information and belief, Defendant Xiao Cheng Zhou ("Mr. Zhou") is an individual who resides at 55 Hallock Street, New Haven, Connecticut 06519 and whose principal place of business is 170 College Street, New Haven, Connecticut 06510.

11. Upon information and belief, Defendant Eileen Zhou ("Ms. Zhou") is an individual who resides at 55 Hallock Street, New Haven, Connecticut 06519 and whose principal place of business is 170 College Street, New Haven, Connecticut 06510.

12. Upon information and belief, Mr. Zhou and Ms. Zhou are husband and wife.

13. Upon information and belief, Defendant Stamford Brother, LLC ("Stamford") is a limited liability company organized and existing under the laws of the State of Connecticut, with its principal place of business at 170 College Street, New Haven, Connecticut 06510.

14. Upon information and belief, Mr. Zhou is the managing member, sole member and owner of Stamford.

**JURISDICTION**

15. This Court has original subject matter jurisdiction under 28 U.S.C. § 1332, in that the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

16. Venue is appropriate in this district under 28 U.S.C. § 1391(b) because a

Doc Num 1005958-V2

substantial part of the events or omissions giving rise to the claim occurred in this district and the Defendants are subject to the Court's personal jurisdiction with respect to this action in this district.

17. Venue is also appropriate in this district because Bonchon and Mr. Zhou have agreed, in writing, to litigate the claims asserted in this Complaint in a court of competent jurisdiction in New York, New York.

18. This Court has personal jurisdiction over the Defendants pursuant to CPLR § 302.

19. The Court also has personal jurisdiction over Mr. Zhou because he agreed, in writing, to submit to the jurisdiction of a court of competent jurisdiction in New York, New York in connection with any disputes between him and Bonchon.

## BONCHON'S SYSTEM AND MARKS

20. Founded by 2002 in South Korea by Jinduk Seo, Bonchon is a fast-casual dining restaurant known for Korean double-fried chicken, Asian fusion cuisine, and Korean specialties. Bonchon's signature fried chicken is hand-breaded, double-fried and served with proprietary sauces made in Busan, South Korea. Sauce is hand-brushed on every piece of chicken and made to order. Since 2006, when the first Bonchon location in the United States opened in Fort Lee, New Jersey, Bonchon has grown to over 150 locations throughout 27 states in the United States, with 498 locations worldwide.

21. Bonchon offers franchises for businesses (each a "Bonchon Business" or "Business") that operate fast-casual service restaurants (each a "Restaurant"), specializing in the sale of Korean style fried chicken, complementary appetizers, side dishes, beverages and related menu items.

22. The franchised Restaurants are established and operated under a comprehensive

Doc Num 1005958-V2

and unique system created and owned by Bonchon (the "System"), which includes distinctive signage, interior and exterior design, décor and color schemes; special recipes and menu items, including proprietary products and ingredients; uniform standards, specifications, and procedures for operation; quality and uniformity of products and services offered; inventory, management and financial control procedures; training and assistance; and advertising.

23. Bonchon offers the right to establish and operate a single franchised "BONCHON" Restaurant under the terms of a Bonchon Franchise LLC Franchise Agreement.

24. Through the expenditure of time, skill, effort and money, Bonchon and its affiliates have developed and are the sole and the exclusive owners of a number of trademarks, service marks and trade names (the "Trademarks") which have been used in the development, organization and operation of a system of fast-casual service restaurants (each a "Restaurant"), specializing in the sale of Korean style fried chicken, complementary appetizers, side dishes, beverages and related menu items.

25. Bonchon and its predecessors have entered into Franchise Agreements for the operation of BONCHON restaurants at various locations throughout the United States and the world, pursuant to which Bonchon and its predecessors license others to operate BONCHON restaurants using Bonchon's Trademarks and System.

26. Bonchon's System consists of the manner in which the Franchisee is licensed to operate the BONCHON Restaurant, the method of doing business, and certain other trade secrets and proprietary information, as designated and adopted by Bonchon and its predecessors.

27. Bonchon and its predecessors have developed the Trademarks, for use in the operation of the licensed BONCHON restaurants, which include the following principal trademarks, which, among several others, have been registered by Bonchon or its affiliates on the

5

Principal Register of the United States Patent and Trademark Office:

| Mark | Registration Number | Description Of Mark | Principal Or Supplemental Register | Registration Date |
|---|---|---|---|---|
| | 6343494 | BONCHON CHICKEN (word and design) | Principal | 05-04-21 |
| BONCHON | 4110949 | BONCHON (words only) | Principal | 03/13/12 |
| | 6176828 | BONCHON (word and design) | Principal | 10/13/20 |
| | 5596065 | BONCHON | Principal | 10/30/18 |
| | 6295809 | BONCHON | Principal | 03/16/21 |
| | 6322772 | BONCHON HANDCRAFTED TASTE & FLAVOR KOREAN FRIED CHICKEN & ASIAN FUSION EST. 2002 | Principal | 04/13/21 |
| | 6348858 | BONCHON KOREAN FRIED CHICKEN | Principal | 05/11/21 |
| | 7038230 | BONCHON KOREAN FRIED CHICKEN | Principal | 04/25/23 |
| CRUNCH OUT LOUD | 1710031 | CRUNCH OUT LOUD | Principal | 09/19/23 |

Doc Num 1005958-V2

| Mark | Registration Number | Description Of Mark | Principal Or Supplemental Register | Registration Date |
|---|---|---|---|---|
| CRUNCH OUT LOUD | 7055957 | CRUNCH OUT LOUD | Principal | 05/16/23 |

## THE PARTIES' FRANCHISE AGREEMENT AND RELATED AGREEMENTS

28.     Prior to his execution of the Bonchon Franchise Agreement, Mr. Zhou met with Bonchon's  representatives in New York, New York to discuss the "BONCHON" franchise opportunity and to negotiate the Bonchon Franchise Agreement, which meetings included meetings at Bonchon's offices in New York.

29.     On October 31, 2015, Bonchon and Mr. Zhou entered into a Bonchon Franchise LLC Franchise Agreement (the "Franchise Agreement"), pursuant to which Mr. Zhou was granted a license, and Mr. Zhou undertook the obligation, to operate a "BONCHON" restaurant at an approved location for ten (10) years and to use Bonchon's proprietary marks and System in connection therewith.

30.     Pursuant to the Franchise Agreement, Mr. Zhou operated a franchised BONCHON restaurant at 170 College Street, New Haven, Connecticut (the "Restaurant").

31.     On October 31, 2015, Bonchon and Mr. Zhou entered into a Bonchon Confidentiality/Non-Competition Agreement ("Non-Competition Agreement") in connection with the parties' Franchise Agreement.

32.     On October 31, 2015, Mr. Zhou executed a Guarantee of Bonchon Franchise Agreement ("Guarantee") in connection with the parties' Franchise Agreement.

33.     On January 29, 2019, Bonchon and Melt Group, LLC (an entity owned and operated by Mr. Zhou) entered into a Bonchon Franchise LLC Franchise Agreement (the

Doc Num 1005958-V2

"Fairfield Franchise Agreement"), pursuant to which Mr. Zhou was granted a license, and Mr. Zhou undertook the obligation, to operate a "BONCHON" restaurant at 1561 Post Road, Fairfield, Connecticut 06824 (the "Fairfield Restaurant") for ten (10) years and to use Bonchon's proprietary marks and System in connection therewith.

34. Pursuant to the parties' Franchise Agreements, Mr. Zhou has paid money to and corresponded with Bonchon in New York and, beginning on or about January 1, 20221, in Dallas Texas.

35. The Franchise Agreement expired on or about October 30, 2025.

36. The Restaurant permanently ceased operations on October 29, 2025.

37. Immediately following the closure of the Restaurant, Defendants opened and began operating of a competing restaurant at 170 College Street, New Haven, Connecticut under the name "MAMA SHIM" offering Korean style fried chicken, complementary appetizers, side dishes, beverages and related menu items (i.e., the same menu previously offered from their franchise BONCHON Restaurant at that same location).

38. Upon information and belief, Defendants are operating MAMA SHIM through their continued use of Bonchon's Confidential Information, including without limitation its proprietary recipes and menus.

**DEFENDANT'S CONTRACTUAL OBLIGATIONS**
**UNDER THE AGREEMENTS**

**The Franchise Agreement**

39. Under Sections 2.01 and 4.01 of the Franchise Agreement, Bonchon granted Mr. Zhou a license to use Bonchon's trademarks, service marks and System in connection with the operation of a BONCHON Restaurant for an initial term of ten (10) years.

40. Pursuant to Section 18.01 of the Franchise Agreement, upon expiration or

8

termination of the Franchise Agreement, Mr. Zhou agreed to pay Bonchon all past due royalties and other sums due to Bonchon; to discontinue his use of the BONCHON name and trademarks; to "de-identify" the Restaurant; and, to otherwise comply with the post-termination provisions therein.

41. Pursuant to Section 18 of the Franchise Agreement, upon expiration or termination of the Franchise Agreement, all rights granted thereunder immediately terminated, and Mr. Zhou was obligated to immediately and permanently terminate the use, in any manner whatsoever, of any confidential methods, procedures and/or techniques associated with the System.

42. Pursuant to Section 12.01 of the Franchise Agreement, Mr. Zhou agreed that he was only licensed to use Bonchon's Confidential Information, as defined therein,  in connection with the operation of his franchised BONCHON Restaurant and that he would immediately cease use of, and return to Bonchon, any such Confidential Information upon expiration of the Franchise Agreement.

43. Pursuant to Section 12.02 of the Franchise Agreement, Mr. Zhou agreed that for two years following the expiration of the Franchise Agreement, he (and any other persons or entities acting with or through him, including his spouse) is prohibited from engaging in a Competitive Business (defined broadly as any business that offers products or services which are authorized for sale under the Bonchon System or any similar or related products or services) within ten (10) miles of the formerly licensed BONCHON Restaurant or within ten (10) miles of any other Bonchon franchisee.

44. Pursuant to Section 12.02 of the Franchise Agreement, Mr. Zhou agreed that the post-expiration covenants are intended to apply and bind not only Mr. Zhou personally, but to

9

"any person or entity within a legal or beneficial interest in or traceable to, down or through [Mr Zhou] … , including (without limitation) your spouse, brother, brother-in-law, sister, sister-in-law, parents, parents-in-law, child, son-in-law or daughter-in-law; any direct or indirect beneficiary of yours; and, any other related person or entity, regardless of how many levels or tiers there may be between you and the person or entity."

45.     Pursuant to Section 12.04 of the Franchise Agreement, Mr. Zhou acknowledges that his violation of the covenants contained in Section 12 of the Franchise Agreement (including the non-compete (12.02) and prohibition against use of Bonchon's Confidential Information (12.01) would result in irreparable injury to Bonchon, for which there is no adequate remedy at law, and as a result, Mr. Zhou consented to the entry of an injunction prohibiting any conduct in violation of the post-expiration covenants in the Franhise Agreements, specifically including those post-expiration obligations in Section 12.

46.     Pursuant to Section 31.01 of the Franchise Agreement, the prevailing party in any litigation between the parties shall be reimbursed by the losing party for all costs incurred in connection with such litigation, including reasonable attorneys' and experts' fees.

**The Non-Competition Agreement**

47.     Pursuant to the Non-Competition Agreement, Mr. Zhou agreed that that he was only licensed to use Bonchon's Confidential Information, as defined therein,  in connection with the operation of his franchised BONCHON Restaurant and that he would immediately cease use of, and return to Bonchon, any such Confidential Information upon expiration of the Franchise Agreement.

48.     Pursuant to the Non-Competition Agreement, Mr. Zhou agreed that for one year following the expiration of the Franchise Agreement, he is prohibited from engaging in a

Doc Num 1005958-V2

competitive business (defined broadly to include any other business which engages in any of the activities which the Franchise Agreement contemplates or which offers or sells any other service, product or component which now or in the future is part of the System, or any confusingly similar product or service or business that offers products or services which are authorized for sale under the Bonchon System or any similar or related products or services) within ten (10) miles of the formerly licensed BONCHON Restaurant or within ten (10) miles of any other Bonchon Franchisee.

49. Pursuant to the Non-Competition Agreement, Mr. Zhou acknowledges that that his violation of the covenants not to compete contained therein, would result in irreparable injury to Bonchon, for which there is no adequate remedy at law, and, as a result, Mr. Zhou consented to the entry of an injunction prohibiting any conduct in violation of the non-compete and confidentiality covenants contained in the Non-Competition Agreement.

50. Pursuant to the Non-Competition Agreement, Mr. Zhou agreed "to pay all costs and expenses (including reasonable attorneys' and experts' fees) incurred by [Bonchon] in connection with the enforcement of those covenants not to compete set forth in this Agreement."

**The Guarantee**

51. Pursuant to the Guarantee, Mr. Zhou agreed to be "personally bound by each and every covenant, term, condition, agreement and undertaking contained and set forth in said Franchise Agreement and any other agreement(s) by and between [Mr. Zhou's Bonchon franchise and Bonchon]."

## BONCHON'S DEMAND FOR COMPLIANCE WITH POST-EXPIRATION OBLIGATIONS

52. By letter dated January 20, 2026 ("Cease and Desist Letter"), Bonchon notified

Doc Num 1005958-V2

Mr. and Ms. Zhou that their operation of MAMA SHIM at the site of their former BONCHON Restaurant constituted a breach of the non-competition and other post-expiration obligations under the Franchise Agreement, and demanded that they immediately cease and desist from operating MAMA SHIM or any other Competitive Business in violation of the Franchise Agreement.

53.     Defendants did not respond to the Cease and Desist Letter and have continued to operate MAMA SHIM at the site of their former BONCHON Restaurant.

<u>**COUNT I**</u>
<u>**(Injunctive Relief Against All Defendants)**</u>

54.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1-53 above, with the same force and effect as if fully set forth herein.

55.     The Franchise Agreement, Non-Competition Agreement and Guarantee (collectively, the "Agreements") are valid and enforceable agreements.

56.     Bonchon has performed all of its obligations under the Agreements.

57.     In Sections 12 and 18 of the Franchise Agreement, Mr. Zhou agreed to post-expiration obligations, including non-compete, confidentiality and non-disclosure covenants.

58.     Mr. Zhou also agreed to post-expiration obligations, including non-compete, confidentiality and non-disclosure covenants in the Non-Competition Agreement.

59.     In the Guarantee, Mr. Zhou agreed to be personally bound by each of the post-expiration obligations, including non-compete, confidentiality and non-disclosure covenants contained in the Franchise Agreement.

60.     Pursuant to Section 12.02 of the Franchise Agreement, Ms. Zhou and Stamford are also bound by each of the post-expiration obligations, including non-compete, confidentiality and non-disclosure covenants contained in the Franchise Agreement.

Doc Num 1005958-V2

61. Upon information and belief, Defendants have used, and continue to use, Bonchon's Confidential Information in connection with their operation of MAMA SHIM restaurant at the location of the formerly licensed BONCHON Restaurant.

62. Since the expiration of the Franchise Agreement, Defendants have operated MAMA SHIM restaurant at the location of the formerly licensed BONCHON Restaurant, in violation of the two-year post-expiration non-competition provisions in Section 12.01, 12.02 and 18 of the Franchise Agreement.

63. Since the expiration of the Franchise Agreement, Mr. Zhou has operated, with the other Defendants, MAMA SHIM restaurant at the location of the formerly licensed BONCHON Restaurant, in violation of the non-competition provisions of the Non-Compete Agreement and in violation of the Guarantee.

64. Tthe foregoing breaches constitute a material breaches of the Agreements.

65. As a direct and proximate result of these breaches, Bonchon has incurred and will continue to incur substantial losses, fees, and expense for which Defendants are liable.

66. Pursuant to Sections 12, 18 and 25 of the Franchise Agreement, Bonchon is entitled to seek an injunction against violation of Sections 12 and 18 of the Franchise Agreement.

67. Pursuant to the Non-Competition Agreement, Bonchon is entitled to seek an injunction against violation of Sections 12 and 18 of the Franchise Agreement.

68. As a result of Defendants' past, present and potential breaches, Bonchon has suffered and in the absence of an injunction will continue to suffer actual, substantial, and irreparable damages, including, but not limited to:

a. Loss of customer goodwill and loyalty;

b. Loss of customers;

Doc Num 1005958-V2

c. Loss of ability to sell other franchises;

d. Loss of franchise stability;

e. Loss of value of its confidential information and trade secrets; and

f. Loss of competitive advantage in and adjacent to New Haven, Connecticut.

69. Bonchon has been and will continue to be irreparably harmed by Defendants' aforementioned misconduct, and monetary damages are an insufficient remedy in that Bonchon can only potentially quantify a limited loss of customers but cannot take into account the continuing irreparable damage to the value of Bonchon's confidential information, goodwill, customer loyalty, and its ability to sell franchises, all of which are caused by Defendants' ongoing contractual violations.

70. Unless this wrongful conduct is enjoined, Defendants are likely to continue to breach their obligations by continuing to breach the confidentiality and non-competition covenants of the Franchise Agreement and continuing to use and disclose Bonchon's confidential information and trade secrets and continuing to breach the non-competition covenants of the Franchise Agreement.

71. In light of the foregoing provisions and Mr. Zhou's breaches of the confidentiality and non-competition covenants, Bonchon is entitled to an injunction:

a. Prohibiting and enjoining Defendants, and all those acting by, through or in concert with them, from continuing to use, and from disclosing to others, and requiring Defendants to immediately deliver to Bonchon all of Bonchon's Confidential Information, which include, without limitation:

(i) the Bonchon Operations Manual, and

(ii) the Confidential Information (as defined in the Franchise Agreement);

14

b. Prohibiting and enjoining Defendants, and all those acting by, through or in concert with them, immediately and continuing for a period of two years from the date of the Court's injunction (or, in the alternative, October 30, 2025, the effective date of expiration of the Franchise Agreement), from directly or indirectly, for themselves or thorough, on behalf of, or in conjunction with any person, persons or legal entity:

(i) diverting or attempting to divert any business or client of Bonchon or of Mr. Zhou while a Bonchon franchisee, to Defendants or any other competitor of Bonchon or its other franchisees,

(ii) performing any act injurious or prejudice to Bonchon's goodwill and the Bonchon System; and,

(iii) directly or indirectly engaging in, aiding, assisting, serving or participating in any other business or activity (a "Competitive Business") which offers or sells any of the products or services which now or hereafter are authorized for sale under the Bonchon System or component thereof in any manner; which offers or sells similar or related products or services; which engages in any of the activities which the Franchise Agreement contemplates that Defendants will engage in; or, which offers or sells any other product, service or component which now or in the future is part of the Bonchon System, or any confusingly similar product or service within ten miles of the former BONCHON Restaurant at 170 College Street, New Haven, Connecticut or within ten miles of the restaurant location of any other franchised or company-owned Bonchon Business (regardless of how established or operated).

72. Bonchon has no adequate remedy at law.

### COUNT II
### (Breach of Contract Against all Defendants:
### In Term and Post Termination Use of and Failure to Return
### Confidential Information and Trade Secrets)

73. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1-72 above, with the same force and effect as if fully set forth herein.

74. Each of the Agreements is a valid and binding agreement.

Doc Num 1005958-V2

75.     Bonchon has complied with all of its obligations under the Agreements.

76.     By utilizing the Confidential Information in connection with its operation of MAMA SHIM after the expiration of the Franchise Agreement, Defendants have breached and shall continue to breach their obligations under the Agreements.

77.     By failing to return to Bonchon the Confidential Information after expiration of the Franchise Agreement, Defendants breached their obligations under the Agreements.

78.     By virtue of Defendants' foregoing breaches of the Agreements, Bonchon  has been damaged and is entitled to recover from Defendants damages in amount to be determined at trial, plus statutory interest thereon.

79.     Bonchon is also entitled under the Agreements to recover from Defendants its costs, expenses and reasonable attorney's fees incurred by virtue of Defendants' foregoing breaches of contract.

## COUNT III
### (Breach of Contract Against All Defendants: Breach of Non-Competition Obligations)

80.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1-79 above, with the same force and effect as if fully set forth herein.

81.     Each of the Agreements is a valid and binding agreement.

82.     Bonchon has complied with all of its obligations under the Agreements.

83.     By owning and operating MAMA SHIM at the location of its formerly licensed BONCHON Restaurant at 170 College Street, New Haven, Connecticut after the expiration of the Franchise Agreement, Defendants breached non-competition covenants of the Agreements.

84.     By virtue of Defendants' foregoing breaches of the Agreements, Bonchon has been damaged and is entitled to recover from Defendants damages in amount to be determined at trial, plus statutory interest thereon.

Doc Num 1005958-V2

85.     Bonchon is also entitled under the Agreements to recover from Defendants its costs, expenses and reasonable attorney's fees incurred by virtue of Defendants' foregoing breaches of contract.

<u>**COUNT IV**</u>
<u>**Unfair Competition Against All Defendants**</u>

86.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 85 above as if fully set forth herein.

87.     Bonchon's Confidential Information was solely created by the labor, skills and expenditures of Bonchon.

88.     Bonchon's Confidential Information exclusively belonged, and continues to belong, to Bonchon.

89.     Defendants wrongfully and in bad faith misappropriated Bonchon's skills, labor and expenditures for their own benefit, and are exploiting same, by using, and likely continuing to use Bonchon's Confidential Information in furtherance of a restaurant offering Korean fried chicken and related products, which competes with Bonchon from the same location from which Defendants operated their franchised BONCHON Restaurant

90.     Upon information and belief, Defendants are intentionally attempting to divert Bonchon's current and prospective customers to their MAMA SHIM restaurant for Defendants' business gain.

91.     As a direct and proximate result of Defendants' misappropriation of Bonchon's Confidential Information, Bonchon has suffered and will continue to suffer irreparable injury and is entitled to monetary damages in an amount to be determined at trial.

**WHEREFORE**, Bonchon requests judgment in its favor against Defendants as follows:

1.     Preliminary and permanent injunctive relief:

Doc Num 1005958-V2

A. Prohibiting and enjoining Defendants, and all those acting by, through or in concert with them, from continuing to use, and from disclosing to others, and requiring Defendants to immediately deliver to Bonchon all of Bonchon's Confidential Information, which include, without limitation:

(i) the Bonchon Operations Manual;

(ii) the Confidential Information (as defined in the Franchise Agreement),

B. Prohibiting and enjoining Defendants, and all those acting by, through or in concert with them, immediately and continuing for a period of two years from the date of the Court's injunction (or, in the alternative, October 30, 2025, the effective date of expiration of the Franchise Agreement), from directly or indirectly, for themselves or thorough, on behalf of, or in conjunction with any person, persons or legal entity:

(i) diverting or attempting to divert any business or client of Bonchon or of Mr. Zhou while a Bonchon franchisee, to Defendants or any other competitor of Bonchon or its other franchisees,

(ii) performing any act injurious or prejudice to Bonchon's goodwill and the Bonchon System; and,

(iii) directly or indirectly engaging in, aiding, assisting, serving or participating in `any other business or activity (a "Competitive Business") which offers or sells any of the products or services which now or hereafter are authorized for sale under the Bonchon System or component thereof in any manner; which offers or sells similar or related products or services; which engages in any of the activities which the Franchise Agreement contemplates that Defendants will engage in; or, which offers or sells any other product, service or component which now or in the future is part of the Bonchon System, or any confusingly similar product or service within ten miles of the former BONCHON Restaurant at 170 College Street, New Haven, Connecticut or within ten miles of the restaurant location of any other franchised or company-owned Bonchon Business (regardless of how established or operated).
.

2. For an accounting of Defendants' revenues and profits arising from the operation of MAMA SHIM since October 30, 2025;

3. For a monetary award against Defendants, jointly and severally, in an amount to be proven at trial, including, but not limited to, compensatory damages, expectancy damages and

Doc Num 1005958-V2

disgorgement of profits;

4.      For a monetary award against Defendants, jointly and severally, for Bonchon's attorneys' fees and costs, in an amount to be proven at trial;

5.      For pre- and post-judgment interest; and

6.      For such other relief as the Court deems just and appropriate.

Dated: New York, New York
      May 13, 2026

Respectfully submitted,

  *s/Kevin M. Shelley*
David J. Kaufmann
Kevin M. Shelley
Clifford J. Bond
Kaufmann Gildin & Robbins LLP
675 Third Avenue, Suite 2200
New York, New York 10017
Tel. (212) 755-3100
Fax. (212) 755-3174
dkaufmann@kaufmanngildin.com
kshelley@kaufmanngildin.com
cbond@kaufmanngildin.com
*Attorneys for Plaintiff*
*Bonchon Franchise LLC*

Doc Num 1005958-V2